| STATE OF NORTH CAROLINA | IN THE GENERAL COURT OF JUSTICE |
| --- | --- |
| COUNTY OF CRAVEN | SUPERIOR COURT DIVISION |
| | FILE NO. 25CV003094-240 |

| | |
| --- | --- |
| AMERESCO, INC. | |
| Plaintiff, | COMPLAINT |
| v. | |
| GOOD AIR, INC. AND UNITED FIRE & CASUALTY COMPANY, | |
| Defendants. | |

**COMES NOW** Plaintiff, Ameresco, Inc. ("Ameresco"), complaining of the Defendants Good Air, Inc. ("Good Air") and United Fire & Casualty Company ("UFG"), and alleges as follows:

## JURISDICTION AND VENUE

1. Plaintiff Ameresco is a corporation formed and existing under the laws of the State of Delaware, registered and authorized to conduct business in the State of North Carolina.

2. Upon information and belief, Good Air is a corporation formed and existing under the laws of the State of Florida. Upon information and belief, at the time of the events giving rise to this dispute, Good Air was registered and authorized to conduct business in the State of North Carolina.

3. Upon information and belief, UFG is an insurance company formed and existing in the State of Iowa.

4. This Court has jurisdiction over the parties and venue is proper in Craven County.

1

## FACTUAL BACKGROUND

1. At all times relevant to the allegations of this Complaint, Ameresco was the general contractor on the design and repair of the building envelope and interior finishes of Building 1016 at Marine Corps Air Station in Cherry Point, NC ("the Project").

2. Pursuant to two subcontracts between Ameresco and Good Air—a mechanical subcontract and a plumbing subcontract (collectively, "the Subcontracts")—Good Air agreed to perform certain mechanical and plumbing work for Ameresco. True and accurate copies of the Subcontracts are attached hereto as **Exhibit A** and **Exhibit B**, respectively, and incorporated herein by reference.

3. On July 29, 2021, UFG issued Performance Bond No. 54-2368439 (plumbing) and Performance Bond No. 54-236840 (mechanical) ("the Bonds" and each a "Bond") as surety for Good Air's work on the Project. A true and accurate copy of the Bonds are attached hereto as **Exhibit C** and **Exhibit D**, respectively, and incorporated herein by reference.

4. In the event Good Air failed to complete its work on the Project in accordance with the Subcontracts, § 5 of each Bond requires UFG to: (1) "Arrange for [Good Air], *with the consent of [Ameresco]*, to perform and complete the Construction Contract" (emphasis added); (2) "[C]omplete the Construction Contract itself . . ."; (3) Arrange for another qualified contractor approved by Ameresco to complete Good Air's scope of work and pay Ameresco the amount of damages in excess of the balance of the contract price incurred as a result of Good Air's default; or (4) "Waive its right to perform and complete, arrange for completion, or obtain a new contractor" and either (a) determine its liability to Ameresco and make payment to Ameresco or (b) deny liability and notify Ameresco, citing the reasons for denial.

2

5. Throughout the course of its work on the Project, Good Air repeatedly and materially breached the Subcontracts by performing substandard and defective work, failing to provide an adequate workforce, allowing workers on site to remain idle for significant periods of time, failing to provide accurate shop drawings for the Project's boiler room, and not adhering to the agreed upon work schedule, causing substantial delays and disruptions to the overall progress of the Project.

6. Good Air's work was consistently of such poor quality that it needed to be redone to meet acceptable professional, regulatory, and government standards, significantly delaying the Project further.

7. Despite substantially delaying the Project, Good Air only completed an estimated 32% of its contracted scope of work.

8. On September 8, 2023, with no notice, permission, or justification, Good Air materially breached the Subcontracts by instructing its work crew to vacate the Project.

9. On September 11, 2023, Ameresco wrote a letter to Good Air, requesting that Good Air return to the Project. On September 14, 2023, Ameresco wrote a follow-up letter to Good Air, requesting Good Air cure certain deficiencies and notifying Good Air that if it failed to return to the Project and correct its deficiencies within the 7-day cure period laid out in § 7.2.1 of the Subcontracts, Ameresco would be forced to terminate the Subcontracts for cause.

10. On September 26, 2023, based on Good Air's repeated material breaches of the Subcontracts, its absence from the Project site, and its failure to take any action to cure the stated deficiencies, Ameresco wrote a letter to Good Air terminating the Subcontracts for cause, pursuant to § 7.2.1 of the Subcontracts.

11. By copy of that same termination letter to UFG, Ameresco also notified UFG of its obligation to perform under the Bonds.

12. Ameresco complied with all requirements and condition precedents of the Bonds.

13. In response to Good Air's material breaches and Ameresco's termination of the Subcontracts for cause, under § 5.1 of the Bonds, UFG requested Ameresco's consent for Good Air to complete the Subcontracts.

14. Ameresco withheld its consent for Good Air to complete the work on the Project on the grounds of Good Air's unprofessional, untimely work, its absence from the Project, and because Ameresco had outstanding claims against Good Air that exceeded the remaining contract balance.

15. In response to Ameresco withholding its consent for Good Air to complete the Subcontracts, UFG has repeatedly refused to honor Ameresco's claims against the Bonds, despite multiple attempts by Ameresco, on May 15 and August 27, 2025, to supply additional information requested by UFG regarding Good Air's material breaches of the Subcontracts, Ameresco's damages as a result of Good Air's material breaches, and UFG's resulting obligation to perform under the Bonds. True and accurate copies of Ameresco's May 15 and August 27, 2025 correspondence with UFG are attached hereto as **Exhibit E** and **Exhibit F**, respectively, and incorporated herein by reference.

16. To date, UFG has refused to pay Ameresco any amounts due and owing pursuant to the Bonds.

**FIRST CLAIM FOR RELIEF**
**(Breach of Contract against Good Air)**

1. The preceding allegations of the Complaint are hereby re-alleged and incorporated herein by reference.

4

2. Ameresco and Good Air entered into valid and enforceable Subcontracts.

3. Good Air breached the Subcontracts by, *inter alia*, performing substandard and defective work, failing to provide an adequate workforce, allowing workers on site to remain idle for significant periods of time, failing to provide accurate shop drawings for the Project's boiler room, and not adhering to the agreed upon work schedule, causing substantial delays and disruptions to the overall progress of the Project at Ameresco's expense.

4. Ameresco has incurred and will continue to incur substantial damages in correcting Good Air's substandard, defective work in the amount of $11,527,167.68.

5. Additionally, Ameresco has also accrued liquidated delay damages due to Good Air's failure to complete its work in a timely fashion. Pursuant to § 9.2.4 of the Subcontracts, Good Air is obligated to pay Ameresco liquidated damages at a daily rate of $2,550, capped at 20% of the contract price for each subcontract, in the event that Good Air failed to complete the work by August 24, 2022. Due to Good Air's delays and inadequate performance of its work, the Project was ultimately delayed by more than 14 months, resulting in liquidated damages at the 20% maximum under the Subcontracts.

6. Under the mechanical subcontract, the maximum liquidated damages amount to $531,508.44, representing 20% of the contract price. Similarly, under the plumbing subcontract, the maximum liquidated damages amount to $185,976.60, representing 20% of the contract price. Collectively, these liquidated damages amount to $717,485.04.

7. Therefore, as a direct result of Good Air's material breach of the Subcontracts, Ameresco has been damaged in a principal amount of no less than twelve million, two hundred forty-four thousand, six hundred fifty-two dollars and seventy-two cents ($12,244,652.72).

**SECOND CLAIM FOR RELIEF**
(Action on Performance Bonds against UFG)

17. The preceding allegations of the Complaint are hereby re-alleged and incorporated herein by reference.

18. UFG furnished the Bonds for the benefit of Ameresco to ensure Good Air would fulfill its obligations under the Subcontracts.

19. Pursuant to the Bonds, UFG had an obligation to arrange for the completion of the Subcontracts upon Good Air's default or, alternatively, to pay for completion of Good Air's scope of work.

20. Ameresco provided UFG with proper notice of Good Air's default under the Subcontracts.

21. UFG's only action in response to Good Air's lack of performance was to request Ameresco's consent to allow Good Air to complete its scope of work.

22. Upon Ameresco justifiably exercising its right to refuse consent, UFG refused to fulfill its obligations under the Bonds.

23. Ameresco is a proper claimant under the Bonds.

24. Ameresco has fully performed its obligations under the Bonds.

25. UFG's actions constitute a material breach of its obligations pursuant to the Bonds.

26. All limitations periods and conditions precedent to the filing of this action have been fully complied with.

27. Ameresco incurred substantial damages due to Good Air's default under the Subcontracts. Due to UFG's material breach of its obligations under the Bonds, it is liable to Ameresco in the amount of $11,527,167.68—the amount of damages Ameresco incurred as a consequence of Good Air's lack of performance under the bonded Subcontracts, in addition to liquidated damages in the amount of $717,485.04.

28. Therefore, as a direct result of UFG's material breach of its obligations under the Bonds, Ameresco has been damaged in a principal amount of no less than twelve million, two hundred forty-four thousand, six hundred fifty-two dollars and seventy-two cents ($12,244,652.72).

**WHEREFORE,** Plaintiff Ameresco prays the Court that:

1. Ameresco have and recover judgment against Good Air in an amount no less $12,244,652.72 plus interest thereon at the highest interest rate, attorneys' fees, and costs as allowed by applicable statutes, but in an exact amount to be proven at trial, for the First Claim of Relief – Breach of Contract;

2. Ameresco have and recover judgment against UFG, jointly and severally, those damages alleged in the Second Claim of Relief for an action upon performance bonds, in an amount no less than $12,244,652.72, plus interest thereon at the highest interest rate, attorneys' fees, and costs as allowed by applicable statutes; and

3. Ameresco be granted any such other and further relief as the Court may deem just and proper.

Dated this 4th day of September, 2025.

**BRADLEY ARANT BOULT CUMMINGS LLP**

*/s/ Ryan L. Beaver*
Ryan L. Beaver [N.C. Bar No. 35156]
Ethan J. Sanders [N.C. Bar No. 61685]
214 N. Tryon St., Suite 3700
Charlotte, North Carolina 28202
(704) 338-6000 – Telephone
(704) 332-8858 – Facsimile
rbeaver@bradley.com
esanders@bradley.com

*Attorneys for Plaintiff Ameresco, Inc.*